**J. MARTINEZ PEREZ, Plaintiff**

v.

**CLEMENTE CINTRON, Defendant**

Civil No. 7 - 1953

District Court of the Virgin Islands

Div. of St. Croix at Christiansted

December 28, 1953

ALMERIC L. CHRISTIAN, Esq., *for plaintiff*

R. H. AMPHLETT LEADER, Esq., *for defendant*

MOORE, *Judge*

This matter came on for hearing with plaintiff, J. Martinez Perez, represented by Almeric L. Christian, Esquire, his attorney in fact, and defendant, Clemente Cintron, represented by R. H. Amphlett Leader, Esquire.

Plaintiff, a commission agent of San Juan, Puerto Rico, sold to defendant merchant of Frederiksted, Saint Croix, on or about July 3, 1952, twenty-five (25) bags of rice and five (5) bags of beans amounting to a total cost of $479.46, including charges for insurance and cartage from warehouse of plaintiff to the dock. Plaintiff delivered these goods to a sailing vessel by the name of "Eudora Edwards" for transporting to defendant in Saint Croix. Defendant refused to accept the goods when he discovered, on arrival of the carrier, that his goods had been loaded

with fertilizer, said fertilizer being directly on top of his rice. Defendant testified that he requested the Captain of the boat to sign on the bill of lading the condition and storage of the rice and this he refused to do. Then defendant went in search of the agent for the boat and found that there was no agent in Saint Croix. Whereupon, he asked the customs department if they would store the merchandise in their storeroom. Mr. Julius Cooper, Deputy Collector of Customs, said that he thought it was a matter for the health department and that he would refer it to them, which he did, and the goods were ordered stored for inspection and examination. Defendant on that same day, notified the plaintiff of his refusal to accept the goods because of contamination with fertilizer, and that they were being held for inspection by the health authorities. Plaintiff immediately sent over an agent to look into the situation. Plaintiff's agent sought out the defendant who maintained his position that he would not accept the goods under the circumstances. Plaintiff's agent obtained the beans and resold them in Saint Croix, but he was unable to secure the rice due to the fact that the health department refused to release it. The rice was subsequently found by the department to be injurious to human consumption and was dumped. Plaintiff sues defendant on the contract of sale, giving him a credit for the bags of beans which were sold for $65.00 and, therefore, asks judgment for the sum of $414.46.

Plaintiff contends that the goods became the property of defendant when they left his warehouse since, under the terms of sale, defendant was required to pay the costs of cartage from the warehouse to the carrier plus the cost of freight and insurance. Plaintiff points out that defendant did not specify shipment by any particular carrier and plaintiff, therefore, shipped by the first available vessel,

the "Eudora Edwards", known to these parts, although not of a regular scheduled line.

Plaintiff also asserts that because of the refusal of defendant to pay for the shipment, he secured the release of the beans and sold them at the contract price for the account of defendant and for the purpose of reducing defendant's damages. Plaintiff points out that other buyers in Saint Croix received similar goods by the same carrier on the same trip, took delivery of them, and sold them without complaint.

Finally, plaintiff contends that defendant's recourse for any damage that may have resulted to his goods is to the carrier, since the goods shipped were already defendant's property at the time they were placed on board the carrier and it was understood that plaintiff would choose a carrier for the defendant. Therefore, plaintiff urges that defendant had no right to refuse to accept the goods and is liable for the contract price less the $65.00 received by plaintiff for the beans.

Defendant admits that under ordinary circumstances and customary business practice in sales of this kind, he as the buyer becomes liable for the goods the moment they are placed on board the carrier. But defendant contends that the instant case is different in that plaintiff failed to exercise good judgment and due care in his selection of a carrier and that when he chose the "Eudora Edwards" without the exercise of proper care and without the consent of defendant, the carrier became the agent of the seller and not the buyer. The carrier chosen by plaintiff was not a regular caller at Saint Croix and the line was not registered there, nor had it any agent in Saint Croix. Said carrier was not a motor vessel and there were other reliable carriers available which made weekly calls at Christiansted and on which plaintiff was accustomed to ship defendant's goods. Under these circumstances, defend-

ant contends that plaintiff is responsible for the negligence of the carrier thus chosen without defendant's consent, or at least, that the seller thereby assumed the risk in carriage.

Defendant further contends that even if title passed to him when the goods were delivered to the carrier, title thereafter re-passed to the plaintiff when his agent came and repossessed the goods and resold them on his own account with full knowledge that defendant had refused to accept them and disclaimed any ownership in them whatsoever.

The determination of this case turns on two questions:

(1) Did the seller (plaintiff) exercise proper care in the selection of a carrier?

(2) When the seller stepped in and sold part of the goods, did he do so as the agent of the buyer or did he retake possession and title to the goods?

■■ There is really no controversy as to the law applicable to the case. It is well established in the law of sales and recognized by both parties that when goods are to be shipped to the buyer, delivery by the seller to the carrier designated by the buyer is a delivery to the buyer, on the theory that the carrier is the agent of the buyer to accept delivery. 46 Am. Jur. 347, sec. 172. It is also well established that where the buyer does not designate any particular carrier, "a delivery to the carrier selected by the seller, if proper care is used in the selection, is a delivery to the buyer to the same extent as though the buyer had himself selected the carrier." 46 Am. Jur. 348. sec. 172.

■■ It is acknowledged by the parties that where the sale is F.O.B. point of departure, as in the case at bar, title ordinarily passes to the buyer on delivery to the carrier and that risk of injury in transit is on the buyer; that, however, title does not pass if the seller fails to exercise proper care in the choice of carrier. Plaintiff claims that there was no lack of care on his part while the defendant

348

contends that the evidence shows abundant lack of care and lack of good judgment on the part of plaintiff in the selection of the "Eudora Edwards".

Defendant, in this regard, points out (1) that the seller "left" the regular scheduled lines of motor vessels by which he was accustomed to ship and chose the "Eudora Edwards"; (2) that seller chose a vessel which is a "tramp", i.e., does not have regular places of call; (3) that seller chose a vessel which had no agent in Saint Croix, therefore, no one with whom the buyer could make any claim or adjustment; (4) that seller chose a vessel which to buyer's knowledge and that of persons in business on the waterfront was unknown in Saint Croix; and (5) that seller chose a vessel whose captain is inexperienced and irresponsible as demonstrated by the manner in which he loaded foodstuffs with fertilizer and also by his attitude to defendant when he asked him to sign a statement as to the condition of the goods.

Plaintiff, on the other hand, points out (1) that the vessel was known to these parts, making occasional calls to all of the islands and that in 1953 (after this case was filed) made some 8 calls to Saint Croix within 3 months; (2) that although the vessel is not a member of a line, it maintained an agent in San Juan; (3) that the seller had previously made shipments by that vessel to Saint Croix; (4) that the vessel is seaworthy and the fact that it does not carry a motor did not affect the goods in any way; and (5) that in the interest of the buyer, he chose the "Eudora Edwards" because it was the first available means of shipment.

■ Since the seller has the power to cause the carrier to become the agent of the buyer and as such accept title to the goods on behalf of the buyer, the seller must perform his duty of proper selection with strict care, unless he has the consent of the buyer to ship by the vessel he has

chosen. Where the seller acts without first consulting the buyer, he can bind the buyer only where he exercises sound judgment and due care in the selection of the carrier. 77 C.J.S. 888, sec. 164(b). In selecting a carrier without the consent of the buyer, he did so at his own risk. He could have cabled the buyer, at little cost, that the "Eudora Edwards" was the only vessel immediately available and he could have received a reply within a day. By such action and little loss of time the seller could have protected himself.

■ The case of Arkansas & Texas Grain Co. v. Young and Fresch Grain Co., 79 Ark. 603, 116 Am. St. Rep. 99, cited by the plaintiff as being in point, did not involve the question of the selection of a carrier at all but turned on whether the condition of the goods when delivered to the carrier was the quality contracted for. While it has been held, as argued by plaintiff, that delivery to a common carrier, in the absence of a designation of a specific carrier by the buyer, is a delivery to the buyer, the majority position is that the seller must have the buyer's consent to his particular selection of a carrier, the seller must notify the buyer of the carrier on which shipment is being made, or that the carrier selected by the seller must be one usually employed in the transportation of goods from the place of the seller to that of the buyer. 77 C.J.S. 888, sec. 164(a); 22 L.R.A. 416 (noto).

This court is, therefore, of the opinion that under the circumstances obtaining in this case, when the seller decided to ship by a carrier other than that by which he had shipped to defendant before, he should have sought defendant's consent in order to protect himself and place the risk on the buyer. Defendant had a right to expect that his consent would be asked if the seller were shipping by a new line. The Court cannot say that the seller exercised proper care when he chose a vessel which was not a regular caller

at the port of Saint Croix nor of an established line with an agent in Saint Croix. The absence of an agent in Saint Croix meant in effect that the buyer and no recourse against the carrier. The weight of evidence indicates that the shippers and merchants in Saint Croix knew little, if anything, of this vessel. Besides, the careless manner in which the vessel was loaded is proof of careless and irresponsible management, a matter which should have been investigated by the plaintiff in making his selection of a carrier for defendant. From the evidence presented, this court finds that the seller did not exercise such care in his selection of the "Eudora Edwards", as a carrier for defendant's goods, as was his duty to exercise. Defendant was justified in refusing the goods when he discovered the condition of shipment by a carrier unknown to him and to whose selection he did not consent. Therefore, it is the finding of this court that the carrier not having been selected with due and proper care, the seller thereby assumed the risk of injury in transit.

In view of our holding on the first question, it is unnecessary to go into the second question, except as the actions of the parties have bearing on the first issue.

It seems clear from the seller's actions that he recognized his responsibility for the shipment. He immediately sent over an agent to Saint Croix to see after the goods. His agent conferred with the buyer who maintained his position that he would not accept the goods in view of the condition in which they came by a carrier unknown to him and from whom he could get no satisfaction. With this knowledge of defendant's flat refusal of acceptance and disclaimer of any title to the goods, plaintiff's agent went ahead and repossessed such of the goods as he could obtain. He was able to secure the beans and hastened to resell them in order to reduce his own loss, and he attempted to obtain the rice from the customs and health authorities but its

release was refused on the grounds of its contamination with fertilizer in transportation. It is the opinion of the Court that plaintiff attempted to repossess the entire shipment for the purpose of resale for his own account. His concern and action indicate that he was anxious to minimize his own losses rather than that he was concerned about any damages that might be suffered by the defendant. He cannot be considered as acting for defendant when the defendant made it clear to him that he accepted no title to the goods or any part thereof.

It is, therefore, the decision of this court that the defendant is not liable on the contract of sale for the cost of the goods shipped by the "Eudora Edwards" on July 3, 1952, an unknown carrier chosen by plaintiff without the consent or notification of defendant.

Judgment may be drawn in accordance with this opinion.